**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**THE CHRISTIAN SEPARATIST
CHURCH SOCIETY OF OHIO, THE
WIFE OF CHRIST, PROSOPOPEIA,**
*et al.*,

       **Plaintiffs,**

                                  **Civil Action 2:15-cv-02757**
    **v.**                            **Judge Algenon L. Marbley**
                                    **Magistrate Judge Elizabeth P.  Deavers**

**THE OHIO DEPARTMENT
OF REHABILITATION AND
CORRECTION,** *et al.*,

       **Defendants.**

## REPORT AND RECOMMENDATION

The matter is before the Court for consideration of Plaintiffs' Motion for Preliminary Injunction (ECF No. 47), Defendants' Memorandum in Opposition (ECF No. 58), and Plaintiffs' Reply in Support (ECF No. 61), as well as Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 41), Defendants' Memorandum in Opposition (ECF No. 48), and Plaintiffs' Motion for Leave to File Supplemental Complaint.  (ECF No. 40.)  For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** the Motion for Preliminary Injunction (ECF No. 47) and Plaintiffs' Motions for Leave to File Supplemental (ECF No. 40) and Amended Complaints.  (ECF No. 41.)

### I.    BACKGROUND

Plaintiffs, a dozen or so inmates housed at various institutions run by the Ohio Department of Rehabilitation and Correction ("ODRC") who refer to themselves collectively as

"the Christian Separatist Church Society of Ohio; The Wife of Christ, *in personam*" and are members of the Christian Separatist Church Society of Ohio, sued Defendants alleging that they are prohibited from practicing their religion. Following the initial screen under 28 U.S.C. §§ 1915A (ECF No. 12) and the Court's ruling on Defendants' Motion to Dismiss (ECF No. 42), Plaintiffs' only surviving claim is for a violation under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Within this remaining claim, Plaintiffs allege that to participate in organized Protestant religious activities, they must join in the activities of the recognized Protestant group, the teachings of which, according to Plaintiffs, are theologically distinct from their own religious beliefs. (Compl. at 7, ECF No. 1.) Plaintiffs therefore seek injunctive relief in the form of an additional ODRC Religious Accommodation allowing segregated congregate worship, bible study, and the observance of Christian Separatist Holy Days. (Pls.' Mot. Prelim. Inj. ¶ 16, ECF No. 47.)

Plaintiffs also seek leave to file an Amended Complaint (ECF No. 41) naming an additional eleven defendants, all of whom were previously listed in the proposed September 4, 2015 amended complaint which this Court denied leave to file. (ECF No. 33.) Plaintiffs further seek leave to file a Supplemental Complaint, naming twelve new individual defendants and alleging nine causes of action. (ECF No. 40-1.)

## II.    PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65(a) permits a party to seek injunctive relief when the party believes it will suffer immediate and irreparable injury, loss, or damage. Fed. R. Civ. P. 65(a). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 573 (6th Cir. 2002).

A district court considering a preliminary injunction must consider and balance the following four factors:

> (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

*Id.* (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Id.* "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citation omitted); *see also Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed."). Additionally, in terms of irreparable injury, the plaintiff "must show irreparable harm that is 'both certain and immediate, rather than speculative or theoretical' to satisfy [his or her] burden . . . ." *NACCO Materials Handling Grp, Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 943 (6th Cir. 2007).

A movant's burden is even more difficult to satisfy where, as here, a prison inmate seeks an injunction to obtain affirmative relief beyond maintenance of the status quo. *See* 18 U.S.C. § 3626(a)(2) ("In any civil action with respect to prison conditions . . . [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." Moreover, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of the criminal justice system caused by the preliminary relief. . .").

Plaintiffs maintain that they are entitled to a preliminary injunction because their claim

under RLUIPA satisfies Federal Rule of Civil Procedure 65's four factors.  The Undersigned disagrees.  Rather, based on the circumstances of this case and the current information before the Court, Plaintiffs have failed to meet their burden to establish the necessity of preliminary injunctive relief.  Here, Plaintiffs do not seek to maintain the status quo pending resolution of the case, but, rather, to attain affirmative relief.  The burden for a preliminary injunction seeking affirmative relief is higher than to maintain the status quo.  *University of Tex. v. Camenish*, 451 U.S. 390, 395 (1981) (the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held.")  Plaintiffs do not meet their burden.

To begin, Plaintiffs have not demonstrated that they have a strong likelihood of success on the merits of their claims.  A Plaintiff asserting a claim under RLUIPA must produce *prima facie* evidence demonstrating his religious exercise was substantially burdened.  *Hayes v. Tenn.*, 424 F. App'x. 546, 554–55 (6th Cir. 2011) ("An action of a prison official 'will be classified as a substantial burden when that action forced an individual to choose between following the precepts of [his] religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs.'").

Under RLUIPA, it is insufficient to show that a regulation restricts religious exercise. This is especially true as "[t]he State does not have an affirmative duty to provide every prison inmate with . . . the [religious] service of his choice . . ."  *Small v. Lehman*, 98 F.3d 762, 767 (3d Cir. 1996), overruled on other grounds by *Boerne v. Flores*, 521 U.S. 507 (1997).  Instead, the plaintiff must show that the regulation imposes "a substantial burden" on the exercise of his religion.  42 U.S.C. § 2000cc(a)(1).  Although the Court of Appeals for the Sixth Circuit has addressed various aspects of RLUIPA, *see, e.g.*, *Hoevenaar v. Lazaroff*, 422 F.3d 366 (6th Cir.

2005), it does not appear to have defined with precision what constitutes a "substantial burden." In *Mann v. Wilkinson*, however, this Court reviewed other courts of appeals that had addressed the issue, concluding that a substantial burden on the exercise of religion exists "if a religious adherent is punished as a result of exercising his or her religion, or is threatened with punishment in order to cause that person to forego practicing his or her religion." No. 2:00-cv-0706, 2007 WL 4562634, at *3 (S.D. Ohio Dec. 21, 2007) (finding that plaintiff did not make an adequate showing that denying him the opportunity to attend separate, segregated Christian Identity worship services substantially burdened his exercise of the religion). If a plaintiff proves that the government's imposition constitutes a substantial burden, the government must then show that the burden "is in furtherance of a compelling governmental interest," and "is the least restrictive means" of doing so. 42 U.S.C. § 2000cc-1(a).

Plaintiffs claim that Defendants' denial of their request for segregated congregate worship violates their rights under RLUIPA. Plaintiffs, however, readily admit that they are entitled to congregate with other Protestants to worship. (*See* Defs.' Mot. Dismiss at 13, ECF No. 25.) Plaintiffs contend that the ability to congregate with other Protestants is inadequate because the recognized Protestant group's teachings are theologically distinct from their own religious beliefs. While Plaintiffs provide certain distinctions between Christian Separatists and the recognized Protestant group, at this time, Plaintiffs do not provide sufficient evidence that group worship with the Protestants imposes a substantial burden on the exercise of their religion. To further negate Plaintiffs' contention that Defendants are imposing a substantial burden on their religious practice, ODRC also allows Plaintiffs alternative means of exercising their religion. Plaintiffs are entitled to meet individually with a minister during normal prison visiting hours, receive religious publications that do not incite viole nce, and engage in individual prayer,

study, and reflection. (*See id.*)

Plaintiffs repeatedly cite *Buchanan v. Burbury*, No. 3:05-cv-7120, 2006 WL 2010773, at *8 (N.D. Ohio July 17, 2006), to support their argument that they are likely to succeed on the merits of their RLUIPA claim. (Pls.' Mot. Prelim. Inj. ¶¶ 16–17.) However, unlike *Buchanan*, Plaintiffs fail to demonstrate unique qualities of their religion that would preclude congregating with other Protestant Christians. *Buchanan*, 2006 WL 2010773, at *8 (finding the differences between Protestant Christians and Sacred Name Sabbatarians sufficiently significant that worshiping together would cause a substantial burden.) Instead, Plaintiffs justify their need for segregated congregate worship by stating that "the CS [Christian Separatist] faith is distinct in practice and cannot be measured in quality of other Christian denominational faith groups." (Pls.' Mot. Prelim. Inj. ¶ 11, ECF No. 47.) Whereas in *Buchanan*, the plaintiffs' expert testified that "if a Sacred Name Sabbatarian were to come into my [Protestant Christian] worship service, not only would they find it extremely offensive, the only reason that they would have for staying is to proselytize . . ." *Id.* Here, in contrast to *Buchanan*, Plaintiffs are requesting segregated group worship where only Christian Separatists are entitled to attend services and fail to provide any evidence that any aspect of their religion precludes congregating with the Protestants.

Furthermore, the request for segregated worship is similar to *Damron v. Jackson*, where the plaintiffs did not succeed on the merits of their RLUIPA claim. No. 2:09-cv-050, 2011 WL 4402767, at *8 (S.D. Ohio Sept. 21, 2011) (granting summary judgment for Defendants after finding plaintiff failed to make a *prima facie* showing that defendants' denial of their request for segregated worship placed a substantial burden upon his ability to practice his religion, Christian Separatism, where, as here, plaintiff had the opportunity for group worship with the other Protestant Christians).

Plaintiffs also claim that Defendants prohibit them from observing Holy Days. (Pls.'
Reply ¶¶ 10–11, ECF No. 61.) In support of their assertion, Plaintiffs merely offer conclusory
statements, without providing the Court explanation on how the alleged restrictions place a
burden on the practice of their religion. Accordingly, the Undersigned finds that based on the
current record, Plaintiffs have not shown that Defendants' regulations place a substantial burden
on the exercise of their religion.

For similar reasons, the Undersigned also finds that Plaintiffs have failed to show that
they will suffer irreparable injury. Plaintiffs claim that they will suffer irreparable injury if the
Defendants are not enjoined from depriving them of congregate worship services and
observations of their Holy Days. (Pls.' Mot. Prelim. Inj. ¶ 6.) As discussed above, however,
Plaintiffs have not shown that the restrictions they complain of place a substantial burden on the
practice of their religion. This is especially true as Plaintiffs are entitled to worship in a group
during the Protestant Christian worship time, meet individually with a minister during normal
prison visiting hours, receive religious publications that do not incite violence, and engage in
individual prayer, study, and reflection. As a result, the Court finds that while the practice of
their religion is limitedly restricted, Plaintiffs have not met their burden of showing that the
restrictions are so severe that they will suffer irreparable harm. Accordingly, the Undersigned
finds that Plaintiffs fail to show that they will suffer irreparable injury.

Finally, the Undersigned finds that the other factors relevant to the preliminary-injunction
analysis do not shift the balance in Plaintiffs' favor. Plaintiffs contend that the issuance of
injunctive relief would not cause substantial harm to others and would service the public interest
because "it is always in the public interest for government officials, including prison personnel,
to obey the Constitution and Statutory Law." (*Id.* ¶ 13.) Defendants on the other hand, posit that

injunctive relief allowing Plaintiffs to worship in a segregated manner would be harmful to others and the public as "racial segregation is always harmful to others and never in the public interest." (Defs.' Opp. at 6.) Even assuming a lack of significant harm to others, without a showing of likelihood of success, the Undersigned is not convinced that changing the status quo would be in the public's interest. Accordingly, based on a balancing of the relevant factors, the Undersigned **RECOMMENDS** that the Court **DENY** Plaintiffs' Motion for Preliminary Injunction. (ECF No. 47.)

### III. PLAINTFFS' MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINT AND SUPPLEMENTAL COMPLAINT

On May 23, 2016, the Court struck Plaintiffs' first attempted amended complaint (ECF No. 17), and then, on March 17, 2017, the Court denied Plaintiffs' leave to file their Second Proposed Amended Complaint. Now, Plaintiffs have filed a Motion for Leave to File Supplemental Complaint and for leave to file a third proposed amended complaint. (ECF No. 42.) Defendants oppose Plaintiffs' Motion for Leave to File Amended Complaint on futility grounds. (ECF No. 48.) Defendants assert that the Third Proposed Amended Complaint Plaintiffs seek leave to file "does nothing more than repeat the same old and conclusory arguments Plaintiffs used to justify their previous motion to amend." (ECF No. 48 at 1.)

#### A. Motion for Leave to File Amended Complaint

Under Federal Rule of Civil Procedure 15(a)(2), the Court should grant leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, when a party decides "to advance a new claim as a result of [] discovery" Rule 15(a) provides for "liberal amendment to the complaint." *Tucker v. Union of Needletrades, Indust. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or

prejudice to the opposing party, *or would be futile*.'"  *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)) (emphasis added).  A court may deny a motion for leave to amend for futility if the amendment could not withstand a motion to dismiss.  *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

A review of Plaintiffs' Third Proposed Amended Complaint reveals that Plaintiffs have asserted no new material facts regarding the events underlying the remaining  RLUIPA claim at issue and it appears that Plaintiffs attempt to reassert the same claims they put forward in the prior amended complaint which this Court denied.

For example, in the Third Proposed Amended Complaint Plaintiffs contend that they were "denied placement of the AST Bible within the visiting room among Judeo-Christians' bibles currently found there."  (*See* ECF No. 41-1 ¶¶ 70–75.)  They assert that "[d]uring the months of May and June, 2013 Plaintiffs . . . filed a Religious Accommodation Request (DRC 4326), pursuant to 72-REG-02, with Chaplain Markko, a religious decision maker at RCI, for placement of the AST Bible within RCI's visiting room . . ."  (*Id.* ¶ 70.)  These facts were already asserted in Plaintiffs' Second Proposed Amended Complaint, which this Court denied leave to file. (ECF No. 26-1 ¶ 224) (Plaintiffs addressed this factual situation and began, "On 5-30-2013 Plaintiff filed a DRC 4326 form for placement of an AST Bible in the Visiting Room for access by visitors and inmates.").

Similarly, Plaintiffs set forth the same factual allegations in the the Third Proposed Amended Complaint as Plaintiffs attempted to assert in the Second Proposed Amended Complaint against Chaplain Chris Markko, Jenni Williams, and Warden Oppy, contending that

Markko, Williams, and Oppy "rendered a dispositive decision without providing any reasonable, rational basis and failed to adhere to the rules of procedure . . ." after denying Plaintiffs' religious accommodation request made under 72-REG-02.  (*See* ECF No. 41-1 ¶¶ 72–83; ECF No. 26-1 ¶¶ 72–83.)  As held previously, Plaintiffs allegations against Defendants based on the grievance process fail to state a claim because "there is no inherent constitutional right to an effective grievance procedure."  *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

Furthermore, Plaintiffs seek to reassert claims against a dozen additional defendants and seek to bring the Third Proposed Amended Complaint as a class action.  Plaintiffs, however, are not entitled to bring their claims as a class action.  *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001) (citing *Fymbo v. State Farm Fire and Casualty Co.*, 213 F.3d 1230, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others.")).

As illustrated, a review of the Third Proposed Amended Complaint demonstrates that Plaintiffs did not cure the deficiencies found in the previous attempted amended complaint nor that the Court found during the initial screening process or the Motion to Dismiss.  Granting Plaintiffs leave to amend their Complaint to assert such claims, therefore, would be futile because their amended claims would not survive a renewed application of the Rule12(b)(6) standard.  *Riverview Health Inst. LLC*, 601 F.3d at 512.  The Undersigned, therefore, **RECCOMENDS** that the Court **DENY** Plaintiffs' Motion for Leave to Amend the Complaint.

**B.  Motion for Leave to Supplement Complaint**

The Undersigned also recommends that the Court deny Plaintiffs' Motion to Supplement the Pleadings.  A district court may permit a party to file a supplemental pleading setting forth transactions, occurrences, or events that have happened since the date of the pleading sought to be supplemented.  Fed. R. Civ. P. 15(d).  As with leave to amend a complaint under Fed. R. Civ. P. 15(a), leave to supplement may be properly denied if amendment would be futile.  *King Lincoln Bronzeville Neighborhood Ass'n v. Husted*, No. 2:06-CV-00745, 2012 WL 395030, at *3 n. 5 (S.D. Ohio Feb. 7, 2012) ("the same standards apply for Rule 15(a) and Rule 15(d)) (citing *Spies v. Voinovich*, 48 F. Appx. 520, 527 (6th Cir. 2002)).

Plaintiffs' proposed Supplemental Complaint names twelve new individual Defendants and endeavors to bring the action on behalf of a purported class of similarly situated inmates. The Proposed Supplemental Complaint also includes nine new causes of action under the First Amendment, Fourteenth Amendment, 42 U.S.C. § 1983, and RLUIPA.  (*See* ECF No. 40-1.) As with the Third Proposed Amended Complaint, a review of Plaintiffs' proposed Supplemental Complaint reveals that Plaintiffs have asserted no new material facts that cure any deficiencies in their already dismissed claims.  Plaintiffs set out three different factual bases for the new claims stressing that they "were not provided procedural due process" under ODRC policies.  (*See* ECF No. 40-1 at 7.)  Plaintiffs' claims are futile because inmates have no inherent constitutional right to an effective grievance procedure.  *Argue*, 80 F. App'x at 430.  The Undersigned therefore **RECCOMENDS** that the Court **DENY** Plaintiffs' Motion for Leave to File Supplemental Complaint.  (ECF No. 40.)

## IV.    CONCLUSION

Accordingly, based on a balancing of the relevant factors, the Undersigned

**RECOMMENDS** that the Court **DENY** Plaintiffs' Motions for Preliminary Injunction (ECF No.

47), for Leave to File Supplemental Complaint (ECF No. 40), and for Leave to File Amended

Complaint.  (ECF No. 41.)  As the Court has now considered and denied leave to file multiple

proposed amended complaints and a supplemental complaint, Plaintiffs are advised that they

must move the Court for leave prior to filing any proposed amended or supplement complaint

demonstrating good cause if they seek leave again.

## V.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to de novo review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex

Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation).  Even when timely objections are filed, appellate

12

review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the

issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date: June 14, 2017                          /s/ *Elizabeth A. Preston Deavers*
                                             ELIZABETH A. PRESTON DEAVERS
                                             UNITED STATES MAGISTRATE JUDGE