UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTIAN SEPARATIST CHURCH
SOCIETY OF OHIO, *et al.*,

      Plaintiffs,

      v.

Civil Action 2:15-cv-2757
Judge Algenon L. Marbley
Magistrate Judge Elizabeth P. Deavers

THE OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTIONS, *et al.*,

      Defendants.

## REPORT AND RECOMMENDATION

Plaintiffs initiated this action by filing a Complaint against Defendants on August 26, 2015. (ECF No. 1.) Plaintiffs are inmates at various state correctional facilities throughout Ohio who brought civil rights claims under 42 U.S.C. § 1983 against Defendants in their official and personal capacities.[1] On October 1, 2015, the Undersigned performed an initial screen, pursuant to 28 U.S.C. §§ 1915A and 1915(e), and issued a Report and Recommendation to dismiss all monetary claims against Defendants in their official capacities, as well as to dismiss certain parties and all claims other than alleged violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, and the First Amendment. (ECF No. 4.) On November 10, 2015, Plaintiffs filed an Amended Complaint without having properly sought leave from the Court. (ECF No. 8.) On May 5, 2016, the District Judge adopted the Report and Recommendation. (ECF No. 12.) On May 23, 2016, the Court struck Plaintiffs'

---

[1] Plaintiffs named the Ohio Department of Rehabilitation and Corrections ("ODRC"), ODRC Director Gary Mohr ("Mohr"), ODRC Religious Services Administrator Michael Davis ("Davis"), and ODRC Chief Inspector Roger Wilson ("Wilson") as Defendants in the Complaint.

first proposed Amended Complaint. (ECF No. 17.) On August 15, 2016, Defendants filed their Motion to Dismiss. (ECF No. 25.) On January 30, 2017, the Undersigned recommended that Plaintiffs' First Amendment claims be dismissed, and the District Judge adopted the recommendation on March 17, 2017. (ECF No. 33; *Christian Separatist Church Soc'y of Ohio v. Mohr*, No. 2:15-CV-2757, 2017 WL 1030458 (S.D. Ohio Mar. 17, 2017).)

Defendants now seek summary judgment with respect to the remaining RLUIPA claims. (ECF No. 82.) Plaintiffs filed their Response in Opposition on October 5, 2017, and Defendants filed their Reply on October 10, 2017. (ECF Nos. 86 & 87.) For the reasons that follow, the Undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **DENIED**. (ECF No. 82.) It is further **RECOMMENDED** that Plaintiffs' claims for money damages against Defendants be **DISMISSED**.

# I.

Plaintiffs are inmates at various state correctional institutions throughout Ohio. Plaintiffs assert claims under RLUIPA for the following:

> violation of racial discrimination, conspiracy to commit racial discrimination, failure of due process, denial of free exercise of religion, failure of equal protection, of freedom of speech, and to peacefully assemble, a failure to keep a contract and cruel and unusual treatment as measured against the First, Fifth, Eighth, and Fourteenth Amendments of the Constitution.

(ECF No. 1 at 6.) Plaintiffs object to ODRC's policy on congregate worship, which forces them to worship with the ODRC-recognized Protestant Christian organization. Plaintiffs claim that Protestant Christianity is so theologically distinct from, and inimical to, their beliefs as to require an additional ODRC Religious Accommodation in order to exercise their religious beliefs. (*Id.*) Plaintiffs consider themselves members of the Christian Separatist Church Society of Ohio, an unincorporated organization for which Plaintiffs have sought a Religious Accommodation under

ODRC regulation 72-REG-02. (*Id*. at 7.) According to Plaintiffs, Defendants have refused all requests for a Religious Accommodation or have arbitrarily delayed making administrative decisions on the matter. (*Id*.)

Plaintiffs claim that without an ODRC Religious Accommodation they cannot engage in their required congregate worship, to include group worship and reading of religious literature. (*Id*. at 11.) In addition, Plaintiffs claim that because of ODRC's failure to approve a Religious Accommodation, they are not able to observe all of their required holy days. (*Id*. at 8-9.) In sum, Plaintiffs allege that Defendants' denial of a Religious Accommodation and other requests amount to a "wholesale denial" of Plaintiffs' right to practice their religion. (*Id*. at 11.)

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than

simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

**III.**

Under RLUIPA, a government may not impose a "substantial burden on the religious exercise" of an inmate, unless the government demonstrates that imposition of such burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means" of furthering that interest. 42 U.S.C. § 2000cc-1(a). The purpose of RLUIPA is to "protect[ ] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent upon the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). In determining whether a practice is the "least restrictive means" of furthering a compelling government interest related to the incarceration of prisoners, a court must give due deference to the judgment of prison officials as to the safety concerns implicated by prison regulations. *Hoevenaar v. Lazaroff*, 422 F.3d 366, 370 (6th Cir. 2005). RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722.

The burden of persuasion is explicitly set forth in the statute:

> If a plaintiff produces *prima facie* evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law

4

(including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. § 2000cc–2. Moreover:

An action of a prison official "will be classified as a substantial burden when that action forced an individual to choose between 'following the precepts of [his] religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Barhite* [*v. Caruso* ], 377 F. App'x [508] at 511 [ (6th Cir. 2010) ] (quoting *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963), and *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18 (1981))).

*Hayes v. Tennessee*, 424 F. App'x 546, 554–55 (6th Cir. 2011). RLUPA's "least restrictive means of furthering a compelling government interest" standard is less deferential than the "reasonable relation to legitimate penological interests" standard typically applied to First Amendment religious exercise claims. *Cutter*, 544 U.S. at 712.

**A. Substantial Burden**

In their Motion for Summary Judgment, Defendants suggest that Plaintiffs have not suffered a substantial burden upon their religious exercise, because, despite being denied certain accommodations, they could still: (1) visit individually with a minister during normal prison visiting hours; (2) receive religious publications which do not incite violence; (3) engage in individual prayer, study, and reflection; (4) wear a religious symbol; and, (5) engage in congregational worship with Protestants. (ECF Nos. 82 at 5 & 82-1 at 1-2.) Plaintiffs argue that these permitted alternatives are inadequate. Plaintiffs believe that allowing group worship only with Protestant Christians substantially burdens their religious exercise because they are not, theologically, Protestant. (ECF No. 86 at 2.)

In at least two previous cases before this Court, members of Plaintiffs' religious group have failed to make a *prima facie* showing that denial of separate worship constitutes a

5

substantial burden upon their ability to practice their chosen religion. *Damron v. Jackson*, No. 2:09-cv-050, 2011 WL 4402767, at * 7 (S.D. Ohio Sept. 21, 2011) (granting defendants summary judgment with respect to congregate worship); *Mann v. Wilkinson*, No. 2:00-cv-0706, 2007 WL 4562634, at *4 (S.D. Ohio Dec. 21, 2007) (granting defendants summary judgment with respect to congregate worship). In the *Damron* case, the Court found that, although "Plaintiff has explained at length why being exposed to Protestant services would be 'obnoxious . . . unacceptable at every level,'" he "made no showing, other than a bare reference to a 'congregate obligation', that Christian Separatism requires him to participate in congregate worship at all." *Damron*, 2011 WL 4402767, at * 7. In *Mann*, the Court found that Plaintiff failed to make a *prima facie* showing because he had not identified any other members of the church at Plaintiff's institution who would attend a congregate worship service. *Mann*, 2007 WL 4562634, at *4.

In the instant matter, however, Plaintiffs have provided the Court with various affidavits setting forth the theological basis for their argument that denial of congregate worship constitutes a substantial burden upon their ability to practice their chosen religion. According to Plaintiffs' testimony, congregate worship is commanded by God and is necessary to attain personal salvation. (ECF No. 86-1 at 3-6; No. 86-2 at 1-2, 4, 6-7, 9-10.) Plaintiffs further testify that the current Protestant congregate worship is theologically distinct and contrary to their religion's teachings—so much so that Plaintiffs do not consider themselves to be Protestants—thus preventing them from engaging in their required religious observations. (*See generally* ECF Nos. 86-1 and 86-2.) Additionally, Plaintiffs have identified approximately fifteen members at Ross Correctional Institution who would attend congregate worship. (ECF No. 86-1 at 16.)

Defendants argue that a substantial burden on the exercise of religion exists only "if a religious adherent is punished as a result of exercising his or her religion, or is threatened with punishment in order to cause that person to forgo practicing his or her religion." (ECF No. 82 at 5 (quoting *Mann*, 2007 WL 45623634, at *3).) To the contrary, however, the U.S. Court of Appeals for the Sixth Circuit has held that a substantial burden exists when prison officials "effectively bar" a prisoner's sincere faith-based conduct. *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) (quoting *Living Water Church of God*, 258 F. App'x at 739). The Court highlighted RLUIPA's broad definition of "religious exercise . . . as '*any* exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Id*. at 564 (emphasis in original)(internal quotes and citations omitted).

In *Haight*, prison officials denied plaintiffs' request for traditional Native American foods for use in their annual powwow. *Id*. at 560. The case record indicated that plaintiffs were sincere in their belief that corn pemmican and buffalo meat are required for a powwow. *Id.* at 564. Prison officials argued that allowing other traditional foods, such as fry bread, in lieu of the requested corn pemmican and buffalo meat permitted plaintiffs adequate opportunity under RLUIPA to exercise their religious beliefs. *Id*. at 565. The Court found, however, that barring corn pemmican and buffalo meat "effectively bars the inmates from this religious practice and forces them to modify their behavior by performing less-than-complete powwows with less-than-complete meals. *Id*. (internal quotes omitted). Although plaintiffs could still perform powwows without some of the requested foods, "governmental actions still imposed a substantial burden on the religious practices of the individuals." *Id*.

In considering whether Defendants' denial of congregate worship "effectively bars" *any* exercise of Plaintiffs' religion, the Court is also mindful that the U.S. Supreme Court has observed,

> "[T]he 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . ." [*Emp't Div., Dept. of Hum. Res. of Or. v.*] *Smith*, 494 U.S., at 877, 110 S.Ct. 1595. Section 3 covers state-run institutions-mental hospitals, prisons, and the like—in which the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise. 42 U.S.C. § 2000cc-1(a); § 1997; *see* Joint Statement 16699 ("Institutional residents' right to practice their faith is at the mercy of those running the institution."). RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion.

*Cutter*, 544 U.S. at 720–21. Plaintiffs' testimony suggests a burden both on their beliefs and on what they sincerely hold to be required physical acts. Plaintiffs' testimony also underscores their dependence on ODRC to "freely . . . attend to their religious needs." *Id*. Plaintiffs' detailed testimony regarding the theological basis of their requirement to participate in congregate worship in which they can express their own religious tenets, rather than those of the ODRC-approved Protestant Christian organization, goes far beyond the bare assertions of similar previous litigation. *See Damron*, 2011 WL 4402767, at * 7. As the *Haight* Court observed, Defendants may challenge the sincerity of Plaintiffs' religious beliefs by assembling a well-developed factual record. 763 F.3d at 565-566. This, however, they have not done. Defendants, in fact, adduce no evidence suggesting that Plaintiffs' religious beliefs are anything other than sincere.

In an absolute, mathematical sense, ODRC's prohibiting Plaintiffs' separate congregate worship may not prevent Plaintiffs from all exercise of their religion, insofar as ODRC allows certain private religious activities that comport with Plaintiffs' non-Protestant theology.

8

*Haight's* impetus is clear, however, that the plain text of RLUIPA protects *any* sincere religious exercise, however repugnant, "including practices that non-adherents might consider unorthodox, unreasonable or not central to a recognized belief system." *Haight*, 763 F.3d at 566. By way of analogy, the *Haight* Court explained that RLUIPA does not permit prison officials to deny grape juice for a Presbyterian communion service on the basis that water is a reasonable alternative that would still allow the ceremony to take place. *Id.* In other words, what is in Defendants' eyes a reasonable religious accommodation may also be a substantial burden on Plaintiffs under RLUIPA.

Plaintiffs have provided evidence that ODRC's congregate worship policy "effectively bars" Plaintiffs from exercising their sincere religious beliefs with respect to congregate worship. *Id.* Plaintiffs' testimony, therefore, sets forth evidence showing Defendants' policies create a "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Barhite*, 377 F. App'x at 511. Accordingly, the Undersigned finds that Plaintiffs have met their burden of making a *prima facie* showing under RLUIPA, and Defendants have failed to prove that no genuine issue of material fact remains for trial.

**B. Least Restrictive Means of Furthering a Compelling Government Interest**

The finding of a substantial burden on Plaintiffs' religious exercise is only a threshold determination. "The State does not have an affirmative duty to provide every prison inmate with . . . the [religious] service of his choice . . . ." *Small v. Lehman*, 98 F.3d 762, 767 (3d Cir. 1996)*, overruled on other grounds by Boerne v. Flores*, 521 U.S. 507 (1997). Defendants may curtail or even prohibit Plaintiffs' separate congregate worship if doing so furthers a compelling government interest in the lease restrictive manner. Defendants do not argue, however, that their congregate worship policy is the least restrictive means of furthering a compelling government

interest, as required under RLUIPA. *Hayes*, 424 F. App'x at 554-555. Defendants, instead, base their summary judgment argument on the four-factor *Turner* reasonableness test applicable to cases arising under the First Amendment. (ECF No. 7 at 7-10; *see Turner v. Safley*, 482 U.S. 78, 81 (1987). The Court, however, dismissed Plaintiffs' First Amendment claims on March 17, 2017. *Christian Separatist Church Soc'y of Ohio*, 2017 WL 1030458, at *2. Only Plaintiffs' claims under RLUIPA remain. *Id*.

The only evidence Defendants set forth in support of their Motion is the affidavit of ODRC Religious Services Administrator Mike Davis, who states that denial of congregate worship "is necessary to preserve security and to reduce the likelihood of racial violence which can be easily fueled by racial separation and inflammatory rhetoric." (ECF No. 82-1 at 1.) Mr. Davis summarizes the forms of observance currently allowed and testifies, "[t]he decision to limit plaintiffs to solitary practitioner status is based on prison security concerns consistent with ODRC's policy of not allowing exclusion from religious services based on race." (*Id*. at 2.) Mr. Davis avers that granting congregate worship "could lead to greater division and violence among prisoners." (*Id*.)

Although ODRC's actions may be justified under the *Turner* reasonableness analysis, Defendants have not satisfied the heavier burden imposed upon them under RLUIPA. The Court does not deny that the threat of racial violence is a valid and ongoing security concern in the prison context. Under RLUIPA, however, Defendants must provide some evidence that ODRC's policy is the least restrictive means necessary to advance its compelling interest in preventing racial violence. *Hayes*, 424 f. App'x at 554-555. Defendants adduce no evidence in support of that proposition. *See* Fed. R. Civ. P. 56(c)(1). To meet their Rule 56(c) burden, Defendants must do more than offer Mr. Davis' "conclusory statements and post hoc rationalizations for

10

their conduct." *Blanken v. Ohio Dep't of Rehab. & Corr.*, 944 F. Supp. 1359, 1368 (S.D. Ohio 1996) (internal quotes and citations omitted).

Although, as nonmovants, Plaintiffs need not, they have identified in detail a proposed plan for congregate worship that they claim is less restrictive and still advances ODRC's compelling interest. (ECF No. 86-1 at 16-17.) Here, Defendants have failed to meet their burden of production under Rule 56(c) as to Plaintiffs' sole remaining claim under RLUIPA. The Undersigned finds, therefore, that a genuine question of material fact exists with respect to ODRC's denial of congregate worship status to Plaintiffs.

## IV.

Defendants note that Plaintiffs' may not maintain RLUIPA claims for money damages against them in their individual capacities. (ECF No. 82 at 6.) Defendants are correct. *Haight*, 763 F.3d at 568. The Undersigned finds, therefore, that Plaintiffs' claims for money damages against Defendants in their individual capacities fail as a matter of law and should be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs' claims seeking declaratory and injunctive relief, however, may still continue. (ECF No. 1 at 2.)

## V.

For the reasons explained above, the Undersigned finds that Defendants have not met their burden of demonstrating that no question of material fact exists in this matter. Accordingly, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **DENIED**. (ECF No. 82.) It is further **RECOMMENDED** that Plaintiffs' claims for money damages against Defendants be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date: December 14, 2017            /s/ *Elizabeth A. Preston Deavers*
                                                ELIZABETH A. PRESTON DEAVERS
                                                UNITED STATES MAGISTRATE JUDGE