IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE CHRISTIAN SEPARATIST CHURCH SOCIETY OF OHIO, THE WIFE OF CHRIST, PROSOPOPEIA, *et al.*, | Case No. 2:15-cv-2757 |
| Plaintiffs, | JUDGE ALGENON L. MARBLEY |
| v. | Magistrate Judge Deavers |
| THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, *et al.*, | |
| Defendants. | |

## OPINION & ORDER

This matter is before the Court for consideration of the Magistrate Judge's December 14, 2017 Report and Recommendation (ECF No. 102) recommending that Defendants' Motion for Summary Judgment (ECF No. 82) be denied and the Plaintiffs' claims for monetary damages be dismissed. For the reasons stated herein, upon de novo review in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), this Court **SUSTAINS** Defendants' Objections (ECF No. 104), **REJECTS** the Magistrate Judge's Report and Recommendation (ECF No. 102), and hereby **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 82).

### I. BACKGROUND

#### A. Factual Background

Plaintiffs are inmates at various state correctional facilities throughout Ohio run by the Ohio Department of Rehabilitation and Correction ("ODRC"). (ECF No. 1 at 2-4). Plaintiffs are members of the Christian Separatist Church Society ("CSCS"), which is "a militantly Christian, White Nationalist organization composed only of white Christian men and women" who hold the

view that "true white Nationalism and Christianity are one in the same philosophy." (*Id.*; ECF No. 104-1). The CSCS faith thus encompasses the belief that the white race is superior to other races and its members hold white separatist views. (ECF No. 86-1 at ¶¶ 5-6).

ODRC's policy on congregate worship requires Plaintiffs to worship with the ODRC-recognized Protestant Christian organization. Plaintiffs object to this policy because their faith is fundamentally different from Protestantism (*Id.* at ¶¶ 30-44) and congregate worship with those of their faith is a central tenant of their religion and necessary to attain personal salvation (*Id.* at ¶¶ 10-11; ECF No. 86-2 at 4). Plaintiffs sought Religious Accommodations under ODRC regulation 72-REG-02 seeking separate congregate worship services but ODRC denied the requests. (ECF No. 47 at Ex. 331-350).

### B. Procedural History

On August 26, 2015, Plaintiffs filed this action against ODRC, ODRC Director Gary C. Mohr, ODRC Religious Services Administrator Michael Davis, and ODRC Chief Inspector Roger Wilson. (ECF No. 1). Pursuant to an initial screen under 28 U.S.C. §§ 1915A, this Court dismissed: (1) all § 1983 claims against ODRC and Defendants in their official capacity; (2) claims for violations of 42 U.S.C. §§ 1981, 1985(3) and 1986; (3) claims for violations of substantive Due Process and Equal Protection under the Fourteenth Amendment; (3) all claims brought by Plaintiff Damron; and (4) all claims brought by the Christian Separatist Church. (ECF Nos. 4, 12). Therefore, the only claims that remained after the initial screening were claims brought by the individual Plaintiffs (minus Mr. Damron) against Defendants Mohr, Davis, and Wilson for violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment.

Defendants moved to dismiss the remaining claims on August 15, 2016. (ECF No. 24). In response, this Court dismissed the First Amendment claim but allowed the RLUIPA claim to continue. (ECF Nos. 33, 42). Thus, the only claim at issue here is the RLUIPA claim. On August 29, 2017, Defendants filed a Motion for Summary Judgment, purporting to seek summary judgment in their favor on both the RLUIPA claim and the First Amendment claim. (ECF No. 82). Plaintiffs filed a Response in Opposition on October 5, 2017 (ECF No. 86), and Defendants filed their Reply on October 10, 2017 (ECF No. 87). On December 14, 2017, the Magistrate Judge issued a Report and Recommendation recommending that the Summary Judgment Motion be denied. (ECF No. 102).

The Magistrate Judge first found that Plaintiffs met their prima facie burden under RLUIPA of showing that prohibiting them from congregate worship substantially burdens their exercise of religion. (*Id.* at 9). Next, the Magistrate Judge found that Defendants failed to show that their congregate worship policy is the least restrictive means of furthering a compelling government interest, as required by RLUIPA. (*Id.* at 11). The Magistrate Judge noted that Defendants incorrectly based their summary judgment argument on the four-factor *Turner* reasonableness test that applies to First Amendment cases, but this Court already dismissed the First Amendment claims. (*Id.* at 10). She found that while ODRC's policy may be justified under the reasonable analysis, Defendants offered no evidence that the policy is the least restrictive means necessary to advance its compelling interest, and recommended denying summary judgment. (*Id.*). Finally, the Magistrate Judge recommended dismissing Plaintiffs' claims for money damages against Defendants in their individual capacity.

## II. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which the objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A party's objections "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citation omitted).

Defendants moved to dismiss under Federal Rule of Civil Procedure 56. Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

4

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir. 1995).

### III. ANALYSIS

In their Objections, Defendants argue that: (1) prohibiting congregate services is the least restrictive means of furthering its compelling government interest of preserving order and authority; and (2) RLUIPA does not create a cause of action against Defendants in their individual capacities. This Court finds that prohibiting congregate services is the least restrictive means of further ODRC's compelling interest, and thus need not reach the second issue.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government demonstrates that the burden "is in furtherance of a compelling government interest" and "is the least restrictive means of furthering" that interest. 42 U.S.C. § 2000cc-1(a). This section of RLUIPA applies to programs that receive Federal financial assistance. § 2000cc-1(b). "Every State, including Ohio, accepts federal funding for its prisons." *Cutter v. Wilkinson,* 544 U.S. 709, 729 (2005). The statute provides that "[a] person may assert a violation of [RLUIPA] as a claim . . . in a judicial proceeding and obtain appropriate relief against a government." § 2000cc-2(a). The plaintiff

must produce prima facie evidence to support a claim alleging a violation of RLUIPA, and the government bears the burden of persuasion on the elements of the claim, except the plaintiff bears the burden of persuasion on whether the challenged practice substantially burdens the plaintiff's exercise of religion. §2000cc-2.

Here, the Magistrate Judge found that Plaintiffs met their burden of showing that the practice of prohibiting separate congregate worship is a substantial burden on the exercise of the CSCS faith. (ECF No. 102 at 9). Neither party disputes this finding. This Court agrees that Plaintiffs' affidavits illuminating the differences between CSCS and Protestantism, and stating that separate congregate worship is a central tenant of their faith and necessary to attain eternal salvation sufficiently establish that prohibiting separate worship constitutes a substantial burden. (ECF No. 86-1 at ¶¶ 10-11, 30-44; ECF No. 86-2 at 4). *See Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) (finding denial of request for traditional Native American foods at annual powwow imposed a substantial burden on the exercise of plaintiffs' religion).

Given that Plaintiffs satisfied their prima facie burden, "the prison policy survives only if it serves a compelling governmental interest in the least restrictive way." *Haight v. Thompson*, 763 F.3d 554, 559–60 (6th Cir. 2014). In this analysis, a court must give due deference to the judgment of prison officials and cannot substitute its own judgment "in place of the experience and expertise of prison officials." *Hoevenaar v. Lazaroff*, 422 F.3d 366, 370 (6th Cir. 2005). RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722. Defendants argue that ODRC has an interest in safety and security and the denial of congregate worship is necessary to preserve security and reduce the likelihood of racial violence. (ECF No. 82 at 9; ECF No. 104 at 3).

The Magistrate Judge acknowledged that "the threat of racial violence is a valid and ongoing concern" and that there is a "compelling interest in preventing racial violence."[1] (ECF No. 102 at 10). Plaintiffs do not object to this finding. Nor can they. There is no question that ODRC has a compelling interest in safety and security and preventing violence. *See Blanken v. Ohio Dep't of Rehab. & Correction*, 944 F. Supp. 1359, 1367 (S.D. Ohio 1996) ("Prison safety and security are penological concerns of the highest order.") (internal citations omitted); *Cutter*, 544 U.S. at 709 (finding "prison security is a compelling state interest" and suggesting courts have a "compelling interest in not facilitating inflammatory racist activity that could imperil prison security and order"); *see also Borzych v. Frank*, 439 F.3d 388, 390–91 (7th Cir. 2006) ("An interest in curtailing violence within prison walls is compelling."); *George v. Sullivan*, 896 F. Supp. 895, 897–98 (W.D. Wis. 1995) ("Defendants assert correctly that there can be no argument that there is a compelling state interest in the security of the Racine Correctional Institution.").

The only remaining question, then, is whether Defendants have met their burden of showing that the practice in question—prohibiting Plaintiffs from separate congregate worship—is the least restrictive means of further their compelling interest in preventing racial violence and maintaining prisoner safety and security. "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its

---

[1] In their Objection to the Magistrate Judge's Report and Recommendation, Defendants also offer a second compelling interest: an interest in complying with constitutional restrictions on race conscious action. (ECF No. 104 at 5). This interest was not discussed at all in their Motion for Summary Judgment, however, nor is it referenced in Mr. Davis' affidavit—the only evidence Defendants submitted in support of the Summary Judgment Motion. The Court, therefore, will not consider this alleged interest. *See Walker v. Beard*, 789 F.3d 1125, 1136 (9th Cir. 2015) ("We may not rely on an interest the State has failed to articulate.").

desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015) (internal quotations omitted). Although the government "bears the burden of proof to show its practice is the least-restrictive means, it is under no obligation to dream up alternatives that the plaintiff himself has not proposed." *Walker v. Beard*, 789 F.3d 1125, 1137–38 (9th Cir. 2015). Further, as with the compelling interest analysis, courts "must afford ODRC due deference in matters touching upon prison security." *Blanken*, 944 F. Supp. at 1368; *see also Cutter*, 544 U.S. at 725 ("It bears repetition . . . that prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area."). That "does not mean, however, that ODRC can meet its burden by conclusory statements and post hoc rationalizations for their conduct." *Blanken*, 944 F. Supp. at 1368. Finally, courts "must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries" and may correctly consider "[c]ost to the government" as an "important factor." *Equal Employment Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 593 (6th Cir. 2018).

The Magistrate Judge found that Defendants did not meet their burden at the summary judgment stage because they did not provide any "evidence that ODRC's policy is the least restrictive means necessary to advance its compelling interest in preventing racial violence." (ECF No. 102 at 10). The Magistrate Judge correctly noted that Defendants base their summary judgment argument on an inapplicable test—the *Tuner* analysis that applies to First Amendment cases—instead of the strict standards required under RLUIPA. (*Id.*). This Court finds Defendants efforts and performance—relying on the wrong test for its analysis—have been underwhelming. Nevertheless, the record in this case compels the Court to grant summary judgment in Defendants' favor.

8

Mr. Davis' affidavit states that the decision denying Plaintiffs congregate worship status "is necessary to security and to reduce the likelihood of racial violence which can be easily fueled by racial separation and inflammatory rhetoric." (ECF No. 82-1 at ¶ 4). The decision is "based on prison security concerns consistent with ODRC's policy of not allowing exclusion from religious services based on race." (*Id.* at ¶ 7). Mr. Davis avers that granting plaintiffs congregate worship rights would "place increased demands on correctional staff" and "lead to greater division and violence among prisoners." (*Id.* at ¶ 8). Mr. Davis' judgment as a prison official is entitled to great weight and the Court cannot substitute its own judgment "in place of" his "experience and expertise." *Hoevenaar*, 422 F.3d at 370-71 (overruling lower court that correctly stated prison officials are accorded "great deference" but then "went on to criticize" the official's "reasons for imposing a blanket ban on all excessive hair growth").

Mr. Davis' testimony is consistent with the prison officials' stated reasons at the time they denied plaintiffs the requested accommodation of group worship. *See, e.g.*, ECF No. 471 at Ex. 337 (decision of Religious Services Administrator from 2014 denying request for congregate services "based on the operational concern for safety, security, and the good order of the institution"); *id.* at Ex. 278 (disposition of grievance notice stating that Lt. Graves met with inmates to "address legitimate institutional interests and concerns, including security"); *id.* at Ex. 301 (letter from Mr. Davis stating "congregate services have been denied based on the operational concern for safety, security, and the good order of the institution"). A review of the record makes clear that Defendants did deny congregate worship out of a concern for safety and security, just like Mr. Davis states in his affidavit, and thus the Court finds the evidence sufficient. *See Blanken*, 944 F. Supp. 1359 (finding prison's grooming policy preventing plaintiff from having long hair was the least restrictive means to further the compelling interest

in uniformity in prison employees' appearance based on single affidavit from one prison official).

While Mr. Davis does not specifically state that prohibiting congregate worship is the "least restrictive means,"—because Defendants' lawyer relied on the incorrect test—his testimony that denying congregate worship is "necessary" is sufficient to meet Defendants' burden here, where the choice is effectively binary. Plaintiffs can either congregate to worship or not congregate to worship. *See Walker*, 789 F.3d at 1137 (finding Defendants' interest in denying "devout racist" plaintiff an exemption from the integrated celling policy was an "exact fit" between the potential harm and the challenged state action where the "only way to avert [the harm] was to deny the requested exemption").

Plaintiffs argue that they have suggested other less restrictive alternatives that Defendants failed to show would be unworkable. (ECF No. 105 at 4). Plaintiffs identify the following "least restrictive alternatives":

- Taking one of the 6-8 time slots that RCI's Chaplain, Chris Markko, currently has to conduct bible study (ECF No. 86-1 at ¶¶ 54-55);
- Using another "available time slot" to schedule their CS religious practice (*id.* at ¶ 55);
- Assembly led by an outside volunteer (ECF No. 47 at 6);
- Assembly via sermons on DVDs under staff supervision (*id.*);
- Assembly via sermons on CDs under staff supervision (*id.*);
- Group Bible Studies (*id.*); and
- Observation of religious Holy Days through "communal services" (*id.*).

A close look at these "least restrictive alternatives" reveals that they are not, in fact, "alternatives" at all. Each form of requested relief involves group assembly—congregate

10

worship. The issue here is not *when* Plaintiffs can worship (during one of the RCI Chaplain's time slots or another available time slot) nor *how* Plaintiffs can worship (with an outside volunteer, through DVDs, or CDs, or Bible Studies). The issue is *whether* Plaintiffs can congregate for separate group worship at all. On this issue, Defendants presented testimony that group worship itself would fuel racial violence. Plaintiffs have made no arguments nor presented any evidence to the contrary. Instead, they have "consistently demanded only one form of relief: an exemption from the [congregate worship] policy"—though masked in different ways. *Walker*, 789 F.3d at 1137. This relief would cause the exact harm all parties agree there is a compelling interest in avoiding—racial violence and interference with the safety and security of the prison.

Critically, Plaintiffs do not deny that allowing them to hold segregated worship services would cause racial violence or interfere with safety. Indeed, they themselves acknowledge in an affidavit that "segregated services are unrealistic within the prison setting." (ECF No. 86-1 at ¶ 56). They thus state that they will allow "any human being [who] desires to practice CS teachings and recognizes their God given reputation as His creation" to participate in their congregate service. (*Id.*). But as a practical matter, the only individuals who "desire to practice CS teachings" will be—and can only be—white individuals. CSCS describes itself as a "militantly Christian, White Nationalist organization composed *only of white Christian men and women*." (ECF No. 104-1) (emphasis added). In order to join CSCS, applicants must fill out a "Membership Application Packet" that explicitly states the Society is "to the exclusion of non-whites and antichrists." (*Id.*). Plaintiffs state in their affidavits that "[t]he CS faith encompasses white separatist views" and "advocates separation." (ECF No. 86-1 at ¶¶ 5, 6). Indeed, this Court has already held, over Plaintiffs' objection, that the remedy Plaintiffs are seeking is

11

"segregated religious services." (ECF No. 42) ("[T]he Magistrate Judge was correct: the Plaintiffs *are* requesting segregated congregate worship."). Thus, Plaintiffs' attempt to argue that they will allow anyone who wants to practice CS to participate in their services is futile. Their acknowledgement that "segregated services are unrealistic in the prison setting" is fatal to their claim—baked into the statement is an admission that the policy of not allowing segregated services is necessary to further the compelling government interest. *See George v. Sullivan*, 896 F. Supp. 895, 897–98 (W.D. Wis. 1995) (finding Defendant met least restrictive means standard when "[p]laintiff [did] not den[y] that the material he sought fosters animosity among individuals of different races or that such animosity is particularly conducive to violence in correctional institutions.").

It is important to note that this case is not about the refusal to recognize a religion as legitimate, or a wholesale denial of Plaintiffs' right to participate in their religion. ODRC already allows Plaintiffs multiple religious accommodations. Plaintiffs can practice their religion privately in their cells. (ECF No. 82-1 at ¶ 5). They can utilize sacred religious texts and other literature if the literature meets correctional center procedures and censorship guidelines. (*Id.*). They are allowed to visit with clergy. (*Id.*). They can pray and observe holy days. (*Id.*). They are allowed to congregate to worship, though only with Protestants and not to the exclusion of other religions or races. ODRC's consideration of these accommodations demonstrates that they were considering least restrictive alternatives to further their interest in preventing racial violence.

While it is true that these accommodations do not allow Plaintiffs to congregate and worship together, it is equally true that Defendants do not have an obligation to give every religious prisoner every accommodation requested. Here, the issues of white supremacy that are

deeply intertwined with Plaintiffs' "militant" religion foster animosity and are, as Mr. Davis testified, likely to fuel racial violence. (ECF No. 82-1; ECF No. 104-1). This Court will therefore uphold Defendants' policy of prohibiting segregated worship under RLUIPA. *See Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006) (finding a complete ban on the religious texts of Odinism, which support white supremacist views and "promote violence to exalt the status of whites and demean other races", was the least restrictive means of furthering the compelling interest of "curtailing violence within prison walls"); *See also Reimann v. Murphy*, 897 F. Supp. 398, 402–03 (finding defendants' confiscation of racist literature was the least restrictive means of furthering the government's compelling interest in "quelling violence in prisons" because the text was "so replete with racial hatred and language inciting violence that there is no way they could be redacted and leave anything more than sentence fragments").

In sum, Defendants have a compelling interest in preventing racial violence and maintaining safety and security, and Mr. Davis' testimony that prohibiting CSCS from congregate worship is necessary to further that interest, coupled with Plaintiffs admission that racially segregated worship is not tenable in a prison setting, is sufficient to find that Defendants' current policy is the least restrictive means under RLUIPA. Such a finding is consistent with the Supreme Court's analysis in *Cutter v. Wilkinson*, where the constitutionality of RLUIPA was established. 544 U.S. 709 (2005). In *Cutter*, the Supreme Court reversed a Sixth Circuit decision finding that RLUIPA violated the Establishment Clause. *Id.* at 713. In doing so, the Court stated that "RLUIPA does not elevate accommodation of religious observations over an institution's need to maintain order and safety." *Id.* at 722.

The *Cutter* Court noted the Sixth Circuit's concern that while an "irreligious prisoner and member of the Aryan Nation who challenges prison officials' confiscation of his white

supremacist literature as a violation of his free association and expression rights" would have his claim evaluated under the more deferential *Turner* test, a "member of the Church of Jesus Christ Christian challenging a similar withholding . . . would have a stronger prospect of success" because of the tougher RLUIPA standard. *Id.* at 729, n. 11. The Supreme Court found, however, that courts are "expected to recognize the government's countervailing compelling interest in not facilitating inflammatory racist activity that could imperil prison security and order." *Id.* This Court is doing just that.

## IV. CONCLUSION

For these reasons, the Court **SUSTAINS** Defendants' Objections (ECF No. 104), **REJECTS** the Magistrate Judge's Report and Recommendation (ECF No. 102), and hereby **GRANTS** Defendants' Motion for Summary Judgment. (ECF No. 82).

**IT IS SO ORDERED.**

                                                         */s/ Algenon L. Marbley*
                                                        **ALGENON L. MARBLEY**
                                                        **UNITED STATES DISTRICT JUDGE**

**DATED: March 30, 2018**